**EXHIBIT C**

Security Deed

Type:  GEORGIA LAND RECORDS
Recorded: 3/9/2022 3:29:00 PM
Fee Amt: $25.00 Page 1 of 22
Bibb County Superior Court
Erica Woodford Clerk

Participant ID(s): 1983094574,
   7067927936

**BK 11182  PG 114 - 135**

**RETURN TO:**
Northwoods Management LLC
2602 Jeanne Lane
Eau Claire, WI 54703

STATE OF California

COUNTY OF Orange

### DEED TO SECURE DEBT, ASSIGNMENT AND SECURITY AGREEMENT

THIS DEED TO SECURE DEBT, ASSIGNMENT OF RENTS AND LEASES, AND SECURITY AGREEMENT, (this "Instrument") is made and entered into as of the _8_ day of March, 2022, by 4315 PINE WARBLER PROPERTIES LLC, a Minnesota limited liability company ("Borrower"), having an address of 4195 Chino Hills Parkway, E513, Chino Hills, CA 91709, in favor of NORTHWOODS MANAGEMENT LLC, a Minnesota limited liability company (together with its successors and assigns, "Lender"), having a business address of 2602 Jeanne Lane, Eau Claire, WI 54703.

### WITNESSETH:

THAT FOR AND IN CONSIDERATION of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations of Borrower hereinafter set forth, Borrower does hereby grant, bargain, sell, convey, assign, transfer, pledge, and set over unto Lender the following described property (collectively, the "Premises"):  (a) all those certain tracts, pieces or parcels of land (and any easements or other rights or interests in land) more particularly described in Exhibit A hereto (the "Land"); (b) all buildings, structures and improvements of every nature whatsoever now or hereafter situated on, under or above the Land (the "Improvements"; together with the Land, the "Property"); (c) all easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights, minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof, and all estates, rights, titles, interests, tenements, hereditaments and appurtenances, reversions and

[32406-35700/3025275/1]                    -1-

remainders whatsoever, in any way belonging, relating or appertaining to the Property or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Borrower; (d) all right, title and interest of Borrower in all furnishings, furniture, fixtures, machinery, apparatus, equipment, fittings, appliances, building supplies and materials, vehicles (excluding Borrower's personal automobiles), chattels, goods, consumer goods, farm products, inventory, warranties, chattel paper, documents, accounts, general intangibles, trade names, trademarks, servicemarks, logos (including any names or symbols by which the Property is known) and goodwill related thereto, and all other articles of personal property of every kind and nature whatsoever, tangible or intangible, now, heretofore or hereafter arising out of or related to the ownership of the Property, or acquired with proceeds of any loan secured by this Instrument, or located in, on or about the Property, or used or intended to be used with or in connection with the construction, use, operation or enjoyment of the Property (said real and personal property referred to in clauses (c) and (d) of this sentence, together with the Property, being hereinafter referred to as the "Project"); (e) all right, title and interest of Borrower in any and all leases, rental agreements and arrangements of any sort now or hereafter affecting the Project or any portion thereof and providing for or resulting in the payment of money to Borrower for the use of the Project or any portion thereof, whether the user enjoys the Project or any portion thereof as tenant for years, invitee, licensee, tenant at sufferance or otherwise, and irrespective of whether such leases, rental agreements and arrangements be oral or written, and including any and all extensions, renewals and modifications thereof (the "Leases") and guaranties of the performance or obligations of any tenants or lessees thereunder (the "Tenants"); (f) all right, title and interest of Borrower in all income, rents, issues, profits and revenues from the Project, including amounts due under the Leases (including all tenant security deposits and all other tenant deposits, whether held by Borrower or in a trust account, and all other deposits and escrow funds relating to any Leases), and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Borrower of, in and to the same; provided, however, that although this Instrument contains (and Borrower hereby agrees that this Instrument contains) a present, current, unconditional and absolute assignment of all of said income, rents, issues, profits and revenues, Borrower and Lender have agreed that so long as there shall exist no Default (as hereinafter defined) Borrower shall have a revocable license to collect routine rental payments and revenues which do not relate to periods more than one month after collection, Borrower hereby agrees that Lender shall be entitled at all times to possession of all other income, rents, issues, profits and revenues (including deposits), and Borrower further agrees that upon the occurrence of a Default hereunder said license shall be automatically revoked without the necessity of further action by Lender; (g) all right, title and interest of Borrower in, to and under all franchise agreements, management contracts, service contracts, utility contracts, leases of equipment, documents and agreements relating to the construction of any Improvements (including any and all construction contracts, architectural contracts, engineering contracts, designs, plans, specifications, drawings, surveys, tests, reports, bonds and governmental approvals) and all other contracts, licenses and permits now or hereafter affecting the Project or any part thereof and all guaranties and warranties with respect to any of the foregoing (the "Contracts"); (h) all right, title and interest of Borrower in any insurance policies or binders now or hereafter relating to the Project, including any unearned premiums thereon; (i) all right, title and interest of Borrower in any and all awards, payments, proceeds and the right to receive the same, either before or after any foreclosure hereunder, as a result of any

temporary or permanent injury or damage to, taking of or decrease in the value of the Project by reason of casualty, condemnation or otherwise; (j) all right, title and interest of Borrower in all utility, escrow and all other deposits (and all letters of credit, certificates of deposit, negotiable instruments and other rights and evidence of rights to cash) now or hereafter relating to the Project or the purchase, construction or operation thereof; (k) all right, title and interest of Borrower in all cash funds, deposit accounts, certificates of deposit, negotiable instruments and other rights and evidence of rights to cash, now or hereafter created under or held by Lender, including any account into which any portion of the "Indebtedness" (as hereinafter defined) may be disbursed by Lender; (l) all claims and causes of action arising from or otherwise related to any of the foregoing, and all rights and judgments related to any legal actions in connection with such claims or causes of action, and all cash (or evidences of cash or of rights to cash) or other property or rights thereto relating to such claims or causes of action; (m) all extensions, additions, improvements, betterments, renewals and replacements, substitutions, or proceeds of any of the foregoing; and (n) all inventory, accounts, chattel paper, documents, instruments, equipment, fixtures, farm products, consumer goods, general intangibles and other property of any nature constituting proceeds acquired with proceeds of any of the property described hereinabove; all of which foregoing items are hereby declared and shall be deemed to be a portion of the security for the Indebtedness and obligations herein described, a portion of the above described collateral being located upon the Land.  For purposes of this Instrument, the term "Loan Documents" shall mean this Instrument, the Note (as hereinafter defined), any Guaranty (as hereinafter defined), any loan agreement, any agreement regarding environmental activity ("Environmental Agreement") pertaining to the Premises or any portion thereof, and any other documents to or of which Lender is a party or beneficiary now or hereafter evidencing, securing or otherwise relating to the Indebtedness or the Premises; and the term "Guaranty" shall mean (collectively, if more than one) any and all co-signings, endorsements or guaranties of the Note or of any obligations of Borrower under the Loan Documents; and the term "Guarantor" shall mean (collectively, if more than one) any and all persons or entities obligated upon a Guaranty.

TO HAVE AND TO HOLD the Premises and all parts, rights, members and appurtenances thereof, to the use, benefit and behoof of Lender, IN FEE SIMPLE forever.

BORROWER WARRANTS that Borrower is lawfully seized and possessed of the Premises and has good right to convey the same and that Borrower shall forever defend the right and title to the Premises unto Lender against the claims of all persons whomsoever.

THIS INSTRUMENT is a deed passing title to the Premises to Lender and is made under the laws of the State of Georgia relating to deeds to secure debt, and is not a mortgage, and is intended by Lender and Borrower to create a perpetual and indefinite security interest in the Premises, and is given to secure the payment of the following described indebtedness (collectively, the "Indebtedness"): (a) the debt evidenced by that certain real estate note dated of even date herewith, made by Borrower to the order of Lender in the principal amount of ONE MILLION TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($1,250,000.00) with the final payment being due on or before MARCH 8, 2027, together with any and all renewals, modifications, consolidations, replacements and extensions thereof (collectively, the

"Note"); (b) any and all additional advances made or costs or expenses incurred by Lender to protect or preserve the Premises or the security interest created hereby, or for taxes, assessments or insurance premiums as hereinafter provided, or for performance of any of Borrower's obligations hereunder, or for any purpose referred to in <u>Section 1.08</u> hereof, or for any other purpose provided herein (whether or not the original Borrower remains the owner of the Premises at the time such advances are made or costs or expenses incurred); and (c) any and all other indebtedness now or hereafter owing by Borrower to Lender, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, consolidations, replacements and extensions thereof.

SHOULD THE INDEBTEDNESS BE PAID according to the tenor and effect thereof when the same shall become due and payable, and should Borrower perform all covenants herein contained in a timely manner, then this Instrument shall be cancelled and surrendered.

## <u>ARTICLE I - COVENANTS AND AGREEMENTS</u>

1.01   <u>Payment of Indebtedness</u>.   Borrower shall pay the Note according to the tenor thereof and the remainder of the Indebtedness promptly as the same shall become due.

1.02   <u>Taxes, Liens and Other Charges</u>.   Borrower shall pay, on or before the due date thereof, all (a) taxes, assessments, and other charges of every character whatsoever now or hereafter levied on, assessed, placed or made against the Indebtedness, the Premises, this Instrument, or any other Loan Document, or any interest of Lender in the Indebtedness, the Premises or the Loan Documents; (b) premiums on policies of insurance now or hereafter covering the Premises, and any and all other insurance policies now or hereafter collaterally pledged to Lender; (c) ground rentals or other lease rentals, if any, payable by Borrower; (d) utility charges, whether public or private; and (e) penalties and interest on any of the foregoing. Borrower shall promptly pay any tax arising out of the passage of any law, order, rule or regulation, subsequent to the date hereof, in any manner changing or modifying the laws now in force governing the taxation of deeds to secure debt or security agreements, or debts secured thereby, or the manner of collection thereof.   Borrower shall promptly deliver to Lender upon demand receipts showing timely payment in full of all of the above items.

1.03   <u>Insurance and Condemnation</u>.

(a)   Borrower shall ensure the existence for the benefit of Lender during the term of this Instrument, of fully paid insurance policies issued by such insurance companies, in such amounts, form and substance, insuring such parties (including Borrower and any contractor performing work upon the Premises) and with such expiration dates as are reasonably acceptable to Lender, providing "all risk" permanent real and personal property, public liability (insuring Borrower and any contractor performing work on the Premises), worker's compensation, rent loss, and such other coverage as Lender may from time to time reasonably require.   At least thirty (30) days prior to the expiration date of each policy maintained pursuant to this <u>Section 1.03</u> a renewal or replacement thereof satisfactory to Lender shall be delivered to Lender, together with receipts evidencing the payment of all premiums required to keep such insurance in

effect for the full term of such policy. At the request of Lender, Borrower shall provide evidence satisfactory to Lender that all such insurance is in effect. If the Premises or any part thereof is damaged by fire or any other cause, Borrower will give immediate written notice thereof to Lender.

(b) Borrower shall notify Lender immediately upon obtaining knowledge of the institution, or the proposed, contemplated or threatened institution, of any action for the taking through condemnation (which term when used in this Instrument shall include any damage or taking by any governmental or quasi-governmental authority and any transfer by private sale in lieu thereof) of the Premises or any part thereof.

(c) Lender shall be entitled to all compensation, awards and other payments arising from any casualty, condemnation or damage to the Premises or any portion thereof and to give receipts and acquittances therefor, and is hereby authorized, at Lender's option, to adjust or compromise any casualty, condemnation or damage claim or cause of action, to commence, appear in and prosecute, in Lender's own or in Borrower's name, any action or proceeding relating to any casualty, condemnation or damage claim or cause of action, and to settle or compromise any claim or cause of action in connection therewith. Each insurance company, condemning authority or other party is hereby authorized and directed to make payment for all such claims and causes of action directly to Lender, instead of to Borrower and Lender jointly. In the event any insurance company, condemning authority or other party fails to disburse directly and solely to Lender but disburses instead either solely to Borrower or to Borrower and Lender jointly, Borrower agrees immediately to endorse and transfer such payments to Lender. Upon the failure of Borrower to endorse and transfer such payments as aforesaid, Lender may execute such endorsements or transfers for and in the name of Borrower and Borrower hereby irrevocably appoints Lender as Borrower's agent and attorney-in-fact to do so. Lender shall not be responsible for any failure to collect any insurance proceeds, any condemnation award or any other payment relating to the Premises, regardless of the cause of such failure. After deducting from any condemnation, insurance or other proceeds received by Lender all expenses of Lender incurred in the collection and administration of such sums, including reasonable and actually incurred attorneys' fees, Lender may apply the net proceeds or any part thereof, at Lender's option, to any one or more of the following: (i) the payment of the Indebtedness, whether or not due and in whatever order Lender elects, (ii) the repair, replacement or restoration of the Premises or any part thereof, and (iii) any other purposes for which Lender is entitled to advance funds under this Instrument, all without affecting the security interest created by this Instrument; and any balance of such moneys not applied by Lender as aforesaid shall be paid to Borrower or the person or entity lawfully entitled thereto. In the event of foreclosure under this Instrument, or any other transfer of title to the Premises in extinguishment or partial extinguishment of the Indebtedness, all right, title and interest of Borrower in and to all insurance policies then in force (including any premiums paid in advance), all insurance proceeds, all condemnation proceeds and awards and all claims and judgments for damage to the Premises or any portion thereof shall pass to the purchaser or Lender, and the purchaser or Lender shall have the right to receive all awards, proceeds or payments relating thereto to the extent of any unpaid Indebtedness following such sale, with legal interest thereon, whether or not a deficiency judgment on this Instrument or the Note shall have been sought or recovered, and to the extent of reasonable counsel fees, costs

and disbursements actually incurred by Lender in connection with the collection of such award, proceeds or payments.

    1.04   <u>Leases and Contracts</u>.  Borrower shall (a) fulfill, perform and observe each and every condition and covenant of landlord or lessor contained in each of the Leases and each and every condition and covenant of Borrower or owner of the Premises contained in the Contracts; (b) give prompt notice to Lender of any claim of default or notice of any event or condition which, with notice or passage of time or both, would constitute a default under any of the Leases or the Contracts, whether given by or given to Borrower, together with a complete copy of any notice expressing such claim; (c) at no cost or expense to Lender, enforce, short of termination, the performance and observance of each and every condition and covenant of each of the parties under the Contracts and the Leases; (d) appear in and defend any action against any one or more of Borrower, Lender, and the Premises arising out of, or in any manner connected with, any of the Leases or the Contracts, or the obligations or liabilities of any party thereto or any guarantor thereof; and (e) furnish to Lender upon demand copies of all Leases and Contracts.  Borrower shall not, without the prior written consent of Lender, (i) enter into new Leases or Contracts; (ii) modify any Leases or Contracts; (iii) terminate or accept the surrender of any Leases or Contracts; (iv) waive or release any other party from the performance or observance of any obligation or condition under any Leases or Contracts; (v) give any consent to any assignment or sublease by any Tenant under any of the Leases; (vi) permit the prepayment of any rents under any of the Leases for more than one month prior to the accrual thereof; or (vii) assign its interest in, to or under any Contracts or Leases or the rents, issues and profits from the Leases or from the Premises to any person or entity other than Lender, except as otherwise expressly permitted by Lender in writing.  Borrower shall take no action which will cause or permit the estate of any Tenant under any of the Leases to merge with the interest of Borrower in the Premises or any portion thereof.  Borrower shall and does hereby authorize and direct each and every present and future Tenant of all or any part of the Premises to pay all rent (and any other sums due the landlord under the Lease) to Lender and to perform all other obligations of that Tenant for the direct benefit of Lender, as if Lender were the landlord under the Lease with that Tenant, immediately upon receipt of a demand by Lender to make such payment or perform such obligations, it being acknowledged that no such demand by Lender shall constitute or be deemed to constitute any assumption by Lender of any obligations of the landlord under such Lease.  No Tenant shall have any responsibility to ascertain whether such demand is permitted hereunder or whether a default shall have occurred.  Borrower hereby waives any right, claim or demand Borrower may now or hereafter have against any such Tenant by reason of such payment of rent or other sums or performance of obligations to or for Lender; and any such payment or performance to or for Lender shall discharge the obligations of the Tenant to make such payment or performance to or for Borrower.  Borrower shall and does hereby authorize and direct each and every present and future party to any Contract (a "Contract Party") to make all payments to Lender and to perform all obligations of that Contract Party for the direct benefit of Lender, as if Lender were Borrower or owner of the Premises under the Contract with that Contract Party, immediately upon receipt of a demand by Lender to make such payments or perform such obligations, it being acknowledged that no such demand by Lender shall constitute or be deemed to constitute any assumption by Lender of any obligations of the Borrower or owner of the Premises under such Contract.  No Contract Party shall have any responsibility to ascertain

whether such demand is permitted hereunder or whether a default shall have occurred. Borrower hereby waives any right, claim or demand Borrower may now or hereafter have against any such Contract Party by reason of such payment or performance of obligations to or for Lender; and any such payment or performance to or for Lender shall discharge the obligations of the Contract Party to make such payment or performance to or for Borrower.

1.05   Operation, Care and Inspection of Premises. Borrower shall operate the Premises at all times for such purposes as may be approved by Lender in writing. Borrower shall maintain the Premises in good condition and repair, shall not commit or suffer any waste to the Premises or do or suffer to be done anything which would increase the risk of casualty to the Premises or any part thereof or which would result in the cancellation of any insurance policy carried with respect to the Premises. Borrower shall comply promptly with all applicable laws, rules, ordinances, regulations, judgments, governmental determinations, restrictive covenants and easements affecting the Premises or any part thereof ("Requirements") and shall cause the Premises to comply at all times and in all respects with all Requirements, and shall at all times operate the Premises, and perform any construction of any portion thereof, in all respects in accordance with all Requirements. Borrower shall promptly repair, restore or replace, to the extent and in a manner satisfactory to Lender, any part of the Premises which may be damaged by fire or other casualty or which may be affected by any condemnation proceeding, provided that Lender thereafter makes available to Borrower (pursuant to a procedure satisfactory to Lender) any net insurance or condemnation proceeds actually received by Lender in connection with such casualty loss or condemnation, to the extent such proceeds are required to defray the expense of such restoration, repair or replacement; provided, however, that the insufficiency of or delay in receipt by Borrower of any such net proceeds shall in no way relieve Borrower of Borrower's obligation to promptly restore, repair or replace. Lender and any persons authorized by Lender shall have the right at all reasonable times to inspect the Premises, any improvements existing or being constructed thereon and all materials used or to be used in such improvements; provided, however, that nothing contained herein shall be deemed to impose upon Lender any obligation to undertake such inspections or any liability for the failure to detect or failure to act with respect to any defect which was or might have been disclosed by such inspections. Notwithstanding anything to the contrary herein, no part of the Premises now or hereafter conveyed as security under this Instrument shall be removed, demolished or materially altered without the prior written consent of Lender.

1.06   Security Agreement. This Instrument is hereby made and declared to be a security agreement encumbering each and every item of personal property included herein as a part of the Premises, in compliance with the provisions of the Uniform Commercial Code as enacted in the jurisdiction applicable thereto (the "Code"), and Borrower hereby authorizes Lender to prepare and file financing statements, continuation statements and financing statement amendments in such form as Lender may require to perfect or continue the perfection of this security interest. The remedies for any violation of the covenants, terms and conditions of the security agreement contained in this Instrument shall be as prescribed herein, or as prescribed by general law, or as prescribed by the Code, all at Lender's election in the discretion of Lender. Upon request or demand by Lender, Borrower shall at Borrower's expense assemble all personal property which is a part of the Premises, and with respect to which such request or demand is

made, and make the same available to Lender at a convenient place upon the Land (or within Improvements upon the Land, as may be appropriate for the protection of such personal property) acceptable to Lender. Any notice of sale, disposition or other action by Lender with respect to personal property which is a part of the Premises sent to Borrower in accordance with the provisions hereof relating to communications at least five (5) days prior to such action shall constitute adequate and reasonable notice to Borrower of such action. Borrower agrees that all property used in connection with the production of income from the Premises or adapted for use therein or which is described or reflected in this Instrument, is, and at all times and for all purposes and in all proceedings, legal or equitable, shall be, regarded as part of the real estate conveyed hereby and that the filing of any financing statement or statements in the records normally having to do with personal property shall not in any way affect such agreement; provided, however, that Lender may determine in Lender's discretion that certain items of such property constitute personal property and are subject to remedies available with respect to personal property. The mention in any financing statement or statements of rights in and to (a) the proceeds of any insurance policy, (b) any award in eminent domain proceedings for a taking or for loss of value, (c) any payment for damage to or losses associated with the Premises, or (d) Borrower's interest as lessor in any present or future lease or rights to income growing out of the use and/or occupancy of the Premises, whether pursuant to a Lease or otherwise, shall not in any way limit any of the rights of Lender as determined by this Instrument or affect the priority of Lender's security interest granted hereby or by any other recorded document, it being understood and agreed that such mention in such financing statement or statements is solely for the protection of Lender in the event any court shall at any time hold with respect thereto, that notice of Lender's priority of interest, to be effective against all persons or against a particular class of persons, must be filed in the Code records. Except with respect to rental payments to the extent specifically provided herein to the contrary, Lender shall have the right of possession of all cash, securities, instruments, negotiable instruments, documents, certificates and any other evidences of cash or other property or evidences of rights to cash or other property which are now or hereafter a part of the Premises, and Borrower shall promptly deliver the same to Lender without further notice from Lender. Borrower hereby irrevocably agrees that Lender may, at the option of Lender, give notice from time to time to any one or more persons or entities who may have or owe or be expected thereafter to have or owe any payment or other property of any nature which is or may become a part of the Premises, of the security interest of Lender therein or of the right, if any, of Lender to possession thereof; and, where Lender has such a right of possession, Lender may demand of such persons or entities delivery of any such payment or other property directly to Lender. If Lender shall at Lender's option so request, Borrower will join in any such notices with Lender. The names of the "Debtor" and the "Secured Party" (which are Borrower and Lender, respectively), the address of the "Secured Party" from which information concerning the security interest may be obtained and the address of "Debtor" are as set forth in Section 3.06, hereof; and a statement indicating the types, or describing the items, of collateral is set forth hereinabove. Borrower agrees to furnish Lender with notice of any change in the name, identity, corporate structure, residence, principal place of business or mailing address of Borrower within ten (10) days of the effective date of any such change.

1.07   Further Assurances; After-Acquired Property.   Borrower shall execute and/or deliver (and pay the costs of preparation and recording thereof) to Lender, upon demand, any

further instrument or instruments so as to evidence, reaffirm, correct, perfect, continue or preserve the obligations of Borrower under the Note or the other Loan Documents, the collateral at any time securing or intended to secure the Note, and the first and prior legal security title and interest of Lender to all or any part of the Premises, whether now owned or hereafter acquired by Borrower.  Upon any failure of Borrower to do so, Lender may make, execute, record, file, re-record and/or re-file any and all such instruments for and in the name of Borrower, and Borrower hereby irrevocably appoints Lender the agent and attorney-in-fact of Borrower to do so.  The security title of this Instrument and the security title created hereby will automatically attach, without further act, to all after-acquired property attached to or used in the operation of the Premises or any part thereof.

1.08   Expenses.  Borrower shall pay or reimburse Lender, upon demand therefor, for all reasonable and actually incurred costs and expenses of any kind (including fees of attorneys, auditors, appraisers and inspectors) paid or incurred by Lender relating to the Indebtedness or the Loan Documents, including those paid or incurred in connection with the commitment, negotiation, documentation, preparation, closing, disbursement or administration of the Indebtedness or any one or more of the Loan Documents, or in connection with the collection of any insurance or other proceeds or enforcement of any rights of Lender under or relating to this Instrument or the other Loan Documents (other than collection of the Indebtedness after maturity), including the costs of any suits or proceedings or disputes of any kind in which Lender is made or appears as a party plaintiff or defendant or which are, in the judgment of Lender, expedient to preserve or protect Lender's interest in the Premises (including condemnation, insolvency, bankruptcy or probate proceedings, administrative proceedings, proceedings relating to enforcement of laws or regulations, forfeiture proceedings, and appeals at all levels of appeal, whether before or after entry of judgment or other determination).  Borrower shall pay any and all interest and penalties owing on account of the Indebtedness or any one or more of the Loan Documents, including any interest or penalties arising on account of failure or delay in payment of any of the items referred to in this provision.  In addition, Borrower shall pay to Lender, upon demand, all reasonable costs and expenses actually incurred (including reasonable attorneys' fees and fees of auditors, appraisers and inspectors) in connection with the collection of the Indebtedness, or any portion thereof, after maturity (whether in due course or by acceleration).  All costs, expenses, penalties and interest paid or incurred by Lender described in this Section 1.08 shall be added to the Indebtedness and shall be and are hereby secured by this Instrument.

1.09   Reports.  Borrower shall keep and maintain or shall cause to be kept and maintained, at Borrower's cost and expense and in accordance with sound accounting practices and principles consistently applied, proper and accurate books, records and accounts reflecting all items of income and expense in connection with the operation of the Premises and all items of cost in connection with the construction of any improvements which are now or hereafter a portion of the Premises, and Lender and any persons authorized by Lender shall have the right at all reasonable times to inspect such books, records and accounts and to make copies thereof. Borrower shall deliver to Lender within thirty (30) days after notice by Lender unaudited statements of the income, expenses and capital expenditures arising out of the conduct of any business on the Premises, or any part thereof or the construction of any improvements thereon, for the twelve (12) month period prior to the giving of such notice or for such other period as

may be designated by Lender in such notice, prepared in such detail and containing such supporting documentation, including rent rolls and lease information, as Lender may request. As soon as practicable, but in any event within one hundred twenty (120) days following the fiscal year-end of each fiscal year (or applicable calendar year), Borrower shall furnish to Lender audited general financial statements of Borrower and each Guarantor for such quarter or such year, and prepared in such detail as Lender may request. All unaudited statements referred to in this Section 1.09 shall be prepared in accordance with sound accounting practices and principles consistently applied and shall be certified by Borrower (or Guarantor, where appropriate), if an individual, or by the chief financial officer or partner of Borrower (or Guarantor, where appropriate). All audited statements shall be prepared by an accounting firm acceptable to Lender. Borrower shall also promptly deliver to Lender copies of any audited general financial statements prepared for Borrower or any Guarantor and copies of any audited reports available to Borrower relating to the conduct of any business on the Premises or the construction of any improvements thereon. Guarantors shall maintain a current (within one (1) year or less) personal financial statement on file with Lender at all times. Borrower and each Guarantor shall deliver to Lender copies of all business and personal tax returns within thirty (30) days of submitting said tax returns to the applicable taxing authority. In the event of a "Default" (as hereinafter defined) hereunder or if Lender suspects that inaccurate information has been provided by Borrower under this Section 1.09, Borrower shall deliver to Lender within thirty (30) days after demand by Lender, statements of the income and expense of the Premises or of the cost of construction of any improvements thereon, for the period designated by Lender, certified by a certified public accountant. Borrower, upon ten (10) days' prior written notice, shall furnish Lender a written statement, duly acknowledged, setting forth the unpaid principal of, and interest on, the Indebtedness and stating whether or not any offsets or defenses exist against the Indebtedness, or any portion thereof and the specific facts relating to any such offset or defense.

1.10   Conveyance or Encumbrance.   Borrower shall not encumber, pledge, convey, transfer or assign any or all of Borrower's interest in the Premises, or execute or consent to any instrument or matter which might affect the title to the Premises or which might effect a change in any one or more Requirements or acquire any portion of the personal property covered by this Instrument subject to any charge or lien, without the prior written consent of Lender, which consent shall be given or withheld by Lender in Lender's discretion; and, if Borrower is a corporation, partnership or other entity, there shall be no encumbrance, pledge, conveyance, transfer or assignment of any legal or beneficial interest whatsoever in Borrower without such prior written consent of Lender.

1.11   Priority. This Instrument is subject and subordinate to that certain Security Deed from Borrower to Key Community Bank dated March  ≤ , 2022, being recorded simultaneously wherewith, which secures payment of a loan in the original principal amount of $4,960,000.00, as to parcel 1 of the Land and that certain Security Deed from Borrower to Key Community Bank dated March ≤, 2022, being recorded simultaneously wherewith, which secures payment of a loan in the original principal amount of $4,800,000.00, as to parcel 2 of the Land.

## ARTICLE II - DEFAULT AND REMEDIES

2.01   _Default_.  The term "Default", wherever used in this Instrument, shall mean any one or more of the following events: (a) failure by Borrower to pay any portion of the Indebtedness when due; or (b) the breach or failure by Borrower or any Guarantor to perform, observe and satisfy all other terms, covenants, conditions and agreements contained in this Instrument or in any of the other Loan Documents; or (c) any warranty or representation of Borrower or any endorser or Guarantor contained in this Instrument or in any other of the Loan Documents, or any material information relating to the Indebtedness or the Loan Documents given to Lender by Borrower or any partner or officer of Borrower, or by any other party on behalf of or at the request of Borrower, being untrue or misleading in any material respect; or (d) a levy shall be made under any process on the Premises or any part thereof or any other property of Borrower or any Guarantor; or (e) the admission in writing by Borrower or any Guarantor of the inability to pay debts generally as they become due; or (f) Borrower or any Guarantor, pursuant to or within the meaning of the Bankruptcy Code, Title 11 U.S.C., or any other present or future federal, state or other common law, case law, statute or regulation relating to bankruptcy, insolvency, appointment of receivers or custodians, dissolution, or other relief for debtors (i) commences a voluntary case, or (ii) consents to or is subject to the entry of any order for relief against it in an involuntary case, or (iii) remains a debtor in an involuntary case for sixty (60) days after the commencement of such case, or (iv) consents to or is subject to the appointment of a receiver, trustee, liquidator, custodian or other party serving a similar function for the Premises or any other property of Borrower or any Guarantor, or (v) makes a general assignment for the benefit of creditors, or (vi) becomes insolvent, or (vii) is subject to the entry of an order for the liquidation of Borrower or any Guarantor; or (g) the assertion of any claim of priority to this Instrument, by title, lien or otherwise in any legal or equitable proceeding; or (h) Borrower or any Guarantor (if a corporation) commences the process of liquidation or dissolution or Borrower's or Guarantor's charter expires or is revoked, or Borrower or any Guarantor (if a partnership or business association) commences the process of dissolution or partition, or Borrower or any Guarantor (if a trust) commences the process of termination or expires or Borrower or any Guarantor (if an individual) dies; or (i) the subjection of the Premises to actual or threatened waste, or the removal, demolition, or alteration of any part thereof without the prior written consent of Lender; or (j) any mechanic's, materialmen's, laborer's, statutory or other lien is filed against the Premises or any portion thereof and not totally released or removed as a lien against the Premises and every part thereof (by bonding, payment or otherwise) within five (5) days after the date of filing thereof; or (k) any suit shall be filed against Borrower or any Guarantor which, if adversely determined, could reasonably be expected substantially to impair the ability of Borrower or such Guarantor to perform each and every one of their respective obligations under the Loan Documents; or (l) any default (for which no cure period is provided, or with respect to which the applicable cure period has expired without cure having been accepted) shall exist under any document evidencing, securing or otherwise relating to any other indebtedness owing, in whole or in part, to Lender, for which Borrower or Guarantor is liable, whether as maker, co-signer, endorser, surety, guarantor, partner of one of the foregoing, or otherwise; or (m) all or any substantial portion of the Premises shall be taken through condemnation or through forfeiture proceedings, or any portion of the Premises shall be damaged by or taken through condemnation or through forfeiture proceedings and the value of the Premises shall, in the discretion of Lender, be materially diminished,  either temporarily or permanently; or (n) the institution of any proceeding seeking the forfeiture of the Premises or

any portion thereof or any interest therein as a result of any criminal or quasi-criminal activity by Borrower (or any person so related to Borrower or the Premises that the Premises or any portion thereof or any interest therein might be forfeited on account of the activity of such person); or (o) the failure of the Premises and every portion thereof to be in compliance in all respects and at all times with all applicable "Environmental Requirements" (as said term is defined in the Environmental Agreement); or (p) the failure or inability (whether imposed by law or otherwise) of Borrower to make any payment required under Section 1.02 of this Instrument; or (q) the failure of this Instrument to grant to Lender a valid, binding and enforceable first lien on and/or security title in and to the Premises, including the personal property of Borrower referred to herein, or the failure of any one or more of the Loan Documents to be legal, valid, binding upon and enforceable against all parties thereto (other than Lender), or the claim by any party (other than Lender) to any one or more of the Loan Documents that any one or more of the Loan Documents is not legal, valid, binding upon and enforceable against all parties thereto (other than Lender).

2.02   Rights of Lender Upon Default. If a Default shall have occurred, then the entire Indebtedness shall, at the option of Lender, immediately become due and payable without notice or demand, time being of the essence, and Lender, at Lender's option, may do any one or more of the following (and, if more than one, either concurrently or independently, and in such order as Lender may determine in Lender's discretion), all without regard to the adequacy or value of the security for the Indebtedness:

(a)   Enter upon and take possession of the Premises without the appointment of a receiver, or an application therefor; at Lender's option, operate the Premises; at Lender's option, exclude Borrower and Borrower's agents and employees wholly therefrom; at Lender's option, employ a managing agent of the Premises; and at Lender's option, exercise any one or more of the rights and powers of Borrower to the same extent as Borrower could, either in Lender's own name, or in the name of Borrower; and receive the rents, incomes, issues and profits of the Premises. Lender shall have no obligation to discharge any duties of a landlord to any Tenant or to incur any liability as a result of any exercise by Lender of any rights hereunder; and Lender shall not be liable for any failure to collect rents, issues, profits or revenues, nor liable to account for any rents, issues, profits or revenues unless actually received by Lender.

(b)   Apply, as a matter of strict right, without notice and without regard to the solvency of any party bound for Lender's payment, for the appointment of a receiver to take possession of and to operate the Premises and to collect and apply the incomes, rents, issues, profits and revenues thereof.

(c)   Pay, perform or observe any term, covenant or condition of this Instrument and any of the other Loan Documents and all payments made or costs or expenses incurred by Lender in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Borrower to Lender with interest thereon at the default rate provided in the Note. The necessity for any such actions and the amounts to be paid shall be determined by Lender in Lender's discretion. Lender is hereby empowered to enter and to authorize others to enter upon the Premises or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without thereby becoming liable to Borrower or any

person in possession holding under Borrower.  Borrower hereby acknowledges and agrees that the remedies set forth in this Section 2.02(c) shall be exercisable by Lender, and any and all payments made or costs or expenses incurred by Lender in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Borrower with interest thereon at the default rate, notwithstanding the fact that such remedies were exercised and such payments made and costs incurred by Lender after the filing by Borrower of a voluntary case or the filing against Borrower of an involuntary case pursuant to or within the meaning of the Bankruptcy Code, Title 11 U.S.C., or after any similar action pursuant to any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable to Borrower, Lender, Guarantor, the Indebtedness or any of the Loan Documents.

(d)    Sell the Premises or any part of the Premises at one or more public sale or sales at the usual place for conducting sales of the county in which the Land or any part of the Land is situated, to the highest bidder for cash, in order to pay the Indebtedness, and all expenses of sale and of all proceedings in connection therewith, including attorneys' fees in the amount of fifteen percent (15%) of the principal and interest owing on the Indebtedness, after advertising the time, place and terms of sale once a week for four (4) weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which sheriff's sales are advertised in said county, all other notice being hereby waived by Borrower.  At any such public sale, Lender may execute and deliver to the purchaser a conveyance of the Premises or any part of the Premises in fee simple, with full warranties of title, and to this end Borrower hereby constitutes and appoints Lender the agent and attorney-in-fact of Borrower to make such sale and conveyance, and thereby to divest Borrower of all right, title and equity that Borrower may have in and to the Premises and to vest the same in the purchaser or purchasers at such sale or sales, and all the acts and doings of said agent and attorney-in-fact are hereby ratified and confirmed, and any recitals in said conveyance or conveyances as to facts essential to a valid sale shall be binding upon Borrower.  The aforesaid power of sale and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and shall not be exhausted by one exercise thereof but may be exercised until full payment of all of the Indebtedness.  In the event of any sale under this Instrument by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Premises may be sold as an entirety or in separate parcels and in such manner or order as Lender in its discretion may elect, and if Lender so elects, Lender may sell the personal property covered by this Instrument at one or more separate sales in any manner permitted by the Code, and one or more exercises of the powers herein granted shall not extinguish nor exhaust such powers, until the entire Premises are sold or the Indebtedness is paid in full.  Lender may, at its option, sell the Premises subject to the rights of any tenants of the Premises, and the failure to make any such tenants parties to any foreclosure proceedings and to foreclose their rights will not be asserted by Borrower to be a defense to any proceedings instituted by Lender to collect the Indebtedness.  If the Indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts of guaranty, assignments of lease or other security instruments, Lender may at Lender's option exhaust the remedies granted under any of said security either concurrently or independently, and in such order as Lender may determine in Lender's discretion.  Upon any foreclosure sale, Lender may bid for and purchase the Premises and shall be entitled to apply all or any part of the

Indebtedness as a credit to the purchase price. In the event of any such foreclosure sale by Lender, Borrower shall be deemed a tenant holding over and shall forthwith deliver possession to the purchaser or purchasers at such sale or be summarily dispossessed according to provisions of law applicable to tenants holding over. In case Lender shall have proceeded to enforce any right, power or remedy under this Instrument by foreclosure, entry or otherwise or in the event Lender commences advertising of the intended exercise of the sale under power provided hereunder, and such proceeding or advertisement shall have been withdrawn, discontinued or abandoned for any reason, then in every such case (i) Borrower and Lender shall be restored to their former positions and rights; (ii) all rights, powers and remedies of Lender shall continue as if no such proceeding had been taken; (iii) each and every Default declared or occurring prior or subsequent to such withdrawal, discontinuance or abandonment shall be deemed to be a continuing Default; and (iv) neither this Instrument, nor the Note, nor the Indebtedness, nor any other Loan Document shall be or shall be deemed to have been reinstated or otherwise affected by such withdrawal, discontinuance or abandonment; and Borrower hereby expressly waives the benefit of any statute or rule of law now provided, or which may hereafter be provided, which would produce a result contrary to or in conflict with this sentence.

(e)     Proceed by a suit or suits in law or in equity or by any other appropriate proceeding or remedy (i) to enforce payment of the Note or the performance of any term, covenant, condition or agreement of this Instrument or any of the other Loan Documents or any other right or (ii) to pursue any other remedy available to Lender.

(f)     Lender may apply any moneys and proceeds received by Lender as a result of the exercise by Lender of any right conferred under this <u>Section 2.02</u> in such order as Lender in Lender's discretion may elect against (i) all costs and expenses, including attorneys' fees in the amount of fifteen percent (15%) of the principal and interest owing on the Indebtedness, incurred in connection with the operation of the Premises, the performance of Borrower's obligations under the Leases and the collection of the rents thereunder; (ii) all costs and expenses, including attorneys' fees in the amount of fifteen percent (15%) of the principal and interest owing on the Indebtedness, incurred in the collection of any or all of the Indebtedness, including those incurred in seeking to realize on or to protect or preserve Lender's interest in any other collateral securing any or all of the Indebtedness; (iii) any or all unpaid principal on the Indebtedness; (iv) any other amounts owing under the Loan Documents; and (v) accrued interest and charges on any or all of the foregoing. The remainder, if any, shall be paid to Borrower or any person or entity lawfully entitled thereto.

## ARTICLE III - GENERAL CONDITIONS

3.01   <u>No Waiver; Remedies Cumulative</u>. No delay or omission by Lender to exercise any right, power or remedy accruing upon any Default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such Default, or acquiescence therein, and every right, power and remedy given by this instrument to Lender may be exercised from time to time and as often as may be deemed expedient by Lender. No consent or waiver, expressed or implied, by Lender to or of any Default shall be deemed or construed to be a consent or waiver to or of any other Default. No delay, indulgence, departure, act or omission by

Lender or any holder of the Note shall release, discharge, modify, change or otherwise affect the original liability under the Note or any other obligation of Borrower or any subsequent purchaser of the Premises or any part thereof, or any maker, surety or Guarantor, or preclude Lender from exercising any right, privilege or power granted herein or alter the security title, security interest or lien hereof. Lender may at any time, without notice to or further consent from Borrower, surrender or substitute any property or other security of any kind or nature whatsoever securing the Indebtedness or release any Guarantor, and no such action will release Borrower's obligations hereunder or alter the effect hereof. No right, power or remedy conferred upon or reserved to Lender hereunder is intended to be exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or under the other Loan Documents or now or hereafter existing at law, in equity or by statute.

3.02    <u>Replacement of Note</u>.   In the event of loss, theft, destruction, total or partial obliteration, mutilation or inappropriate cancellation of the Note, Borrower shall execute and deliver, in lieu thereof, a replacement note, identical in form and substance to the Note and dated as of the date of the Note.

3.03    <u>Survival of Certain Agreements</u>.   Notwithstanding the repayment of the Indebtedness and the cancellation or transfer of the Loan Documents, or any foreclosure of, or sale under power contained in, this Instrument, or the acquisition by Lender of title to the Premises in lieu of foreclosure, or any other realization upon collateral securing the Indebtedness, all agreements of Borrower contained herein or in any of the other Loan Documents to pay the costs and expenses of Lender in connection with the loans contemplated by the Loan Documents and all agreements of Borrower contained herein or in any of the other Loan Documents to indemnify and/or hold harmless Lender shall continue in full force and effect so long as there exists any possibility of expense or liability on the part of Lender.

3.04    <u>No Obligation to Third Parties</u>.   The Loan Documents are made solely for the benefit of Lender. No tenant nor any party involved with the construction of any improvements on any part of the Premises nor any other party whatsoever shall have standing to bring any action against Lender as the result of the Loan Documents or to assume that Lender will exercise any remedies provided herein. No party other than Lender shall be deemed to be a beneficiary of any provision of the Loan Documents, any and all of which may be freely waived in whole or in part by Lender in Lender's discretion at any time. Nothing contained in the Loan Documents shall be deemed to impose upon Lender any liability for the performance of any obligation of Borrower under any of the Leases or Contracts. Nothing contained in this <u>Section 3.04</u> is intended to deprive Borrower of the benefit of any covenant by Lender in favor of Borrower contained in the Loan Documents.

3.05    <u>Miscellaneous</u>.   The Loan Documents shall inure to the benefit of and be binding upon Borrower and Lender and their respective heirs, executors, legal representatives, successors, successors-in-title and assigns, subject to all restrictions on transfer herein or in the other Loan Documents. The Indebtedness and the Loan Documents (and any interest therein) are assignable by Lender, and any assignment of the Loan Documents by Lender shall operate to vest in the assignee all rights and powers conferred upon and granted to Lender by the Loan

Documents; and, in the event of any such assignment of the entire interest of Lender in the Loan Documents, Lender shall be relieved of all obligations and liabilities under the Loan Documents; neither the Loan Documents nor the proceeds of the loans contemplated by the Loan Documents may be assigned by Borrower without the prior consent of Lender, which may be given or withheld at the discretion of Lender. The Loan Documents may be changed, waived, discharged or terminated only by an instrument in writing signed by the party against whom enforcement of such change, waiver, discharge or termination is sought. The Loan Documents contain the entire agreement between Borrower and Lender relating to the loan transactions contemplated thereby and supersede entirely any and all prior written or oral agreements with respect thereto; and Borrower and Lender hereto acknowledge and agree that there are no contemporaneous oral agreements with respect to the subject matter hereof. Nothing contained in the Loan Documents shall be construed to create an agency, partnership or joint venture between Borrower and Lender. All personal pronouns used in the Loan Documents whether used in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural, and vice versa. Titles of articles and sections in the Loan Documents are for convenience only and in no way define, limit, amplify or describe the scope or intent of any provisions thereof. If more than one person or entity constitutes, collectively, Borrower or Guarantor, all of the provisions of the Loan Documents referring to Borrower or Guarantor shall be construed to refer to each such person or entity individually as well as collectively; and, if Borrower or Guarantor is a partnership, all of the provisions of the Loan Documents referring to Borrower or Guarantor shall be construed to apply to each of the general partners of Borrower or Guarantor and of any and all further tiers of general partners in the structures of Borrower or Guarantor. When anything is described or referred to in the Loan Documents in general terms and one or more examples or components of what has been described or referred to generally is associated with that description (whether or not following the word "including"), the examples or components shall be deemed illustrative only and shall not be construed as limiting the generality of the description or reference in any way. Wherever in the Loan Documents the approval or consent of Lender is required or permitted, or wherever a requirement of Lender or the standard of acceptability or satisfaction of Lender must be determined, such approval, consent or determination of Lender shall not be unreasonably exercised; provided, however, that wherever it is indicated that such approval, consent or determination is to be given or made at the option or in the discretion or judgment of Lender, then Lender may grant or withhold such approval or consent or make such determination without restriction in Lender's sole and absolute discretion. If any provisions of the Loan Documents or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of each of the Loan Documents and the application of such provisions to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law. Time is of the essence with respect to each and every covenant, agreement and obligation of Borrower under the Loan Documents. All exhibits referred to in the Loan Documents are by such reference incorporated into the Loan Documents as if fully set forth therein.

3.06    Communications. Unless and except as otherwise specifically provided herein, any and all notices, elections,  approvals, consents, demands, requests and responses thereto ("Communications") permitted or required to be given under the Loan Documents shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed to have been

properly given and shall be effective upon the earlier of receipt thereof or deposit thereof in the United States mail, postage prepaid, certified with return receipt requested, to the other party at the address of such other party set forth below herein or at such other address within the continental United States as such other party may designate by notice specifically designated as a notice of change of address and given in accordance herewith; provided, however, that the time period in which a response to any Communication must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective with respect to Communications sent prior to the time of receipt thereof. Receipt of Communications under the Loan Documents shall occur upon actual delivery (whether by mail, telecopy transmission, messenger, courier service, or otherwise) to any person who is Borrower or an officer or general partner of Borrower at any location where such person may be found, or to an officer, partner, agent or employee of Borrower or Lender, at the address of such party set forth hereinbelow, subject to change as provided hereinabove. An attempted delivery in accordance with the foregoing, acceptance of which is refused or rejected, shall be deemed to be and shall constitute receipt; and an attempted delivery in accordance with the foregoing by mail, messenger, or courier service (whichever is chosen by the sender) which is not completed because of changed address of which no notice was received by the sender in accordance with this provision prior to the sending of the Communication shall also be deemed to be and constitute receipt. Any Communication, if given to Lender, must be addressed as follows, subject to change as provided hereinabove:

> Northwoods Management, LLC
> 2602 Jeanne Lane
> Eau Claire, WI 54703

and, if given to Borrower, must be addressed as follows, subject to change as provided hereinabove:

> 4315 Pine Warbler Properties, LLC
> 4195 Chino Hills Parkway, E513
> Chino Hills, CA 91709

3.07   Indemnity.   Borrower shall protect, defend, indemnify and save harmless Lender from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including reasonable and actually incurred attorneys' fees and expenses) imposed upon or incurred by Lender by reason of (a) any claim for brokerage fees or other such commissions relating to the Premises or the Indebtedness, or (b) the condition of the Premises, or (c) failure to pay recording, mortgage, intangibles or similar taxes, fees or charges relating to the Indebtedness or any one or more of the Loan Documents, or (d) the Loan Documents or any claim or demand whatsoever which may be asserted against Lender by reason of any alleged action, obligation or undertaking of Lender relating in any way to the Indebtedness or to any matter contemplated by the Loan Documents. Nothing contained in this Section 3.07 shall be construed to indemnify or hold harmless Lender against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of

Lender, its agents or employees ("Lender Caused Bodily Injury or Property Damages"), which shall be deemed an exception to the indemnity and hold harmless provision contained in the immediately preceding sentence; provided, however, that such exception shall be strictly limited to liability for Lender Caused Bodily Injury or Property Damages; and provided, further, that Borrower assumes the burden of proof that any liability for which Lender claims the benefit of the foregoing indemnity and hold harmless provision is, in fact, liability for Lender Caused Bodily Injury or Property Damages. In the event Lender incurs any liability, loss or damage arising out of or in any way relating to the loan transactions contemplated by the Loan Documents (including any of the matters referred to in this <u>Section 3.07</u>), the amounts of such liability, loss or damage shall be added to the Indebtedness, shall bear interest at the interest rate specified in the Note from the date incurred until paid and shall be payable on demand.

3.08   <u>Greater Estate</u>.  In the event that Borrower is the owner of a leasehold estate with respect to any portion of the Premises and Borrower obtains a fee estate in such portion of the Premises, then, such fee estate shall automatically, and without further action of any kind on the part of Borrower, be and become subject to the security title and lien hereof.

3.09   <u>Applicable Law</u>.  This Instrument shall be interpreted, construed and enforced according to the laws of the State of Georgia.

[SIGNATURE ON NEXT PAGE]

IN WITNESS WHEREOF, Borrower has executed this Instrument under seal, as of the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____
Unofficial Witness

_____
Notary Public
                    [Notary Seal]

My Commission Expires:_____

------------------------------------
**See Attached Notary Certificate**
------------------------------------

BORROWER:

4315 PINE WARBLER PROPERTIES, LLC,
a Minnesota limited liability company

By:_____(SEAL)
   Name:_____
   Title:_____

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _____ORANGE_____ )

On __3/7/2022_____ before me, JONATHAN FOTOPOULOS, NOTARY PUBLIC____

(insert name and title of the officer)

personally appeared __EDWARD J. MYLETT III_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

JONATHAN FOTOPOULOS
COMM. # 2293350
NOTARY PUBLIC · CALIFORNIA
ORANGE COUNTY
My Comm. Exp. July 13, 2023

**EXHIBIT A**

**Description of Real Property**

Parcel 1:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 112 OF THE 4TH LAND DISTRICT IN BIBB COUNTY, GEORGIA AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

Commence at a point being at the northeasterly miter of the intersection of the westerly right-of-way of Log Cabin Drive (50' R/W) and the northerly right-of-way of Mercer University Drive (R/W varies);

THENCE along said right-of-way of Mercer University Drive, South 58 degrees 24 minutes 26 seconds West for a distance of 45.12 feet to a point;
THENCE North 78 degrees 11 minutes 18 seconds West for a distance of 102.53 feet to a point;
THENCE North 78 degrees 33 minutes 40 seconds West for a distance of 89.92 feet to a point;
THENCE North 79 degrees 46 minutes 28 seconds West for a distance of 3.53 feet to a concrete right-of-way monument;
THENCE North 08 degrees 53 minutes 07 seconds East for a distance of 10.30 feet to a 1/2 -inch rebar set;
THENCE North 86 degrees 54 minutes 45 seconds West for a distance of 82.73 feet to a point;
THENCE departing the said right-of-way of Mercer University Drive, North 01 degree 41 minutes 08 seconds East for a distance of 25.61 feet to a point, said point being the POINT OF BEGINNING;
THENCE, from said POINT OF BEGINNING, North 01 degrees 41 minutes 08 seconds East for a distance of 104.38 feet to a 1/2-inch rebar found;
THENCE South 88 degrees 14 minutes 49 seconds East for a distance of 9.90 feet to a 1/2 -inch rebar set;
THENCE North 01 degree 41 minutes 08 seconds East for a distance of 86.98 feet to a 1/2-inch rebar found;
THENCE South 88 degrees 24 minutes 09 seconds East for a distance of 270.87 feet to a point;
THENCE South 00 degrees 51 minutes 40 seconds West for a distance of 196.01 feet to a 1/2 -inch rebar set;
THENCE South 45 degrees 54 minutes 06 seconds West for a distance of 19.43 feet to a 1/2 -inch rebar set;
THENCE North 36 degrees 44 minutes 19 seconds West for a distance of 7.22 feet to a 1/2 -inch rebar set;
THENCE South 53 degrees 15 minutes 35 seconds West for a distance of 19.68 feet to a 1/2-inch rebar set;
THENCE South 36 degrees 44 minutes 26 seconds East for a distance of 7.88 feet to a 1/2-inch rebar set;
THENCE South 51 degrees 20 minutes 16 seconds West for a distance of 17.14 feet to a 1/2-inch rebar set;
THENCE North 78 degrees 11 minutes 08 seconds West for a distance of 152.66 feet to a 1/2-inch rebar set;
THENCE North 11 degrees 48 minutes 58 seconds East for a distance of 7.62 feet to a 1/2-inch rebar set;
THENCE North 78 degrees 10 minutes 58 seconds West for a distance of 19.68 feet to a 1/2 -inch rebar set;
THENCE South 11 degrees 48 minutes 58 seconds West for a distance of 7.62 feet to a 1/2-inch rebar set;
THENCE North 78 degrees 11 minutes 16 seconds West for a distance of 24.16 feet to a 1/2-inch rebar set;
THENCE along a curve to the left, a length of 49.10 feet with a radius of 1005.61 feet, being

[32406-35700/3025275/1]

subtended by a chord bearing North 79 degrees 35 minutes 11 seconds West for a distance of 49.09 feet to a 1/2-inch rebar set and the Point Of Beginning.

AND

Parcel 2:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING SITUATED IN LAND LOT 38 OF MACON RESERVE EAST, MACON, BIBB COUNTY, GEORGIA, SAID TRACT OR PARCEL Of LAND CONTAINING 71,764 S.F. OR 1.647 ACRES, MORE OR LESS. ANO BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS, TO WIT:

COMMENCING AT A CONCRETE MONUMENT FOUND MARKING THE INTERSECTION OF THE SOUTHERLY RIGHT-OF-WAY LINE OF SHURLING DRIVE (100'R/W) ANO THE WESTERLY RIGHT-OFWAY LINE OF GRAY HIGHWAY (GA. HWY 11,22,49; U.S. HWY 129; 88'R/W), SAID CONCRETE MONUMENT BEING THE POINT OF REFERENCE; THENCE, ALONG SAID SOUTHERLY RIGHT-OF-WAY LINE OF SHURLING DRIVE S89°31'14"W, 138.18' TO A 1/2" REBAR SET AND THE POINT OF BEGINNING; THENCE, LEAVING SAID RIGHT-OF-WAY LINE. S00°15'41"W 122.21' TO A 1/2" REBAR SET; THENCE S30°54'27"E, 21.68' TO A1/2" REBAR SET; THENCE, N59°44'19"E. 18.25' TO A1/2" REBAR SET; THENCE, S30°15'41'"E, 37.95' TO A COTTON SPINDLE SET AT THE POINT OF CURVATURE OF A CURVE TO THE RIGHT HAVING A RADIUS OF 56.50', ARC LENGTH OF 45.83', CHORD BEARING OF S06°59'59"E, AND CHORD LENGTH OF 44.63', TO A 1/2" REBAR SET; THENCE, S30°43'00E, 7.77' TO A 1/2" REBAR FOUND LOCATED ON THE WESTERLY RIGHT-OF-WAY LINE OF GRAY HIGHWAY (STATE ROUTES 11, 22, 49; U.S. HWY. 129; 88' R/W); THENCE, ALONG SAID WESTERLY RIGHT-OF-WAY LINE, S27°16'09'"W, 77.74' TO A 1/2" REBAR SET ON SAID RIGHT-OFWAY LINE; THENCE, CONTINUING ALONG SAID RIGHT-OF-WAY LINE OF GRAY HIGHWAY, S27°13'24"W, 139.03' TO A 1/2" REBAR SET; THENCE, LEAVING SAID RIGHT-OF-WAY LINE OF GRAY HIGHWAY, N30°22'34'"W, 237.10' TO A 1/2" REBAR SET; THENCE, N30°22'34"W 166.90', TO A 1/2" REBAR SET; THENCE N47°28'34"W, 76.10' TO A COTTON SPINDLE ON THE SOUTHERLY RIGHT-OF-WAY LINE OF SHURLING DRIVE; THENCE, ALONG SAID SOUTHERLY RIGHT-OF-WAY LINE OF SHURLING DRIVE, N86°37'20"E, 81.12' TO A 1/2" REBAR SET; THENCE, CONTINUING ALONG SAID SOUTHERLY RIGHT-OF-WAY LINE OF SHURLING DRIVE, N88°42'17"E, 155.95' TO A PK NAIL & CAP SET IN AN ASPHALT DRIVE; THENCE, CONTINUING ALONG SAID RIGHT-OF-WAY LINE, S89°50'46"E, 67.83' TO THE POINT OF BEGINNING.

Together with:

EASEMENTS AND OTHER INTERESTS IN REAL PROPERTY CONTAINED IN THAT CERTAIN NONEXCLUSIVE EASEMENT FROM STATE OF GEORGIA, ACTING BY AND THROUGH THE STATE PROPERTIES COMMISSION TO SED-GRAY, LLC, A MICHIGAN LIMITED LIABILITY COMPANY, DATED NOVEMBER 4, 2005, FILED FOR RECORD DECEMBER 5, 2005, AND RECORDED IN DEED BOOK 6874, PAGE 165, AFORESAID RECORDS.

**END OF LEGAL DESCRIPTION**

[32406-35700/3025275/1]